**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **NORMA J. CRISCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:08-00839** |
| | ) | **AND** |
| | ) | **CIVIL ACTION NO. 1:11-00243** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleading. (Document Nos. 26 and 28.), and Plaintiff's Reply. (Document No. 29.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Norma J. Crisco (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 31, 1995 (protective filing date), alleging disability as of October 31, 2003, due to "arthritis right knee, depression, high blood pressure, [and] hormonal problems."[1] (Tr. at 14, 94-

---

[1] On her form Disability Report - Appeal, dated August 2, 2005, Claimant alleged that her condition had worsened because her knees went out and she fell. (Tr. at 121.) She also alleged that she suffered from depression and had difficulty concentrating. (*Id.*) On her from Disability Report - Appeal, dated January 23, 2006, Claimant alleged the following additional disabling impairments: "It is hard for me to stand, sit or walk for long periods of time. I am stressed out all of the time. I have a hard time sleeping." (Tr. at 100.) She further alleged that her condition had worsened in that she experienced "a lot more pain in [her] right knee." (*Id.*)

97, 136.) The claims were denied initially and upon reconsideration. (Tr. at 56-58, 60-62.) On January 30, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 54.) The hearing was held on December 20, 2006, before the Honorable Robert S. Habermann. (Tr. at 486-511.) By decision dated July 18, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-21.) The ALJ's decision became the final decision of the Commissioner on April 30, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On June 16, 2008, Claimant filed an action in this Court seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The parties agreed to remand the case for further development and evaluation. (Document No. 15.) By Memorandum Opinion and Order entered November 6, 2008, the undersigned remanded the matter pursuant to sentence four of 42 U.S.C. § 405(g). (Document Nos. 16 and 17.)

By Notice dated December 8, 2008, the Appeals Council remanded the case to the ALJ to resolve an apparent conflict "between the decisional step one and step four findings regarding whether the [C]laimant's job as a receptionist constituted substantial gainful activity and further develop the record with respect to that job during the relevant period." (Tr. at 543-46.) A hearing was held on June 18, 2009, before ALJ Habermann. (Tr. at 563-83.) By decision dated August 5, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 527-34.) The ALJ's decision became the final decision of the Commissioner on March 31, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 512-14.) Claimant filed the present action seeking judicial review of the administrative decision on April 11, 2011, pursuant to 42 U.S.C. § 405(g). (Document No. 2, 1:11-cv-00243.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.

3

McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

4

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, December 31, 1995. (Tr. at 530 and 533, Fining No. 2.) Under the second inquiry, the ALJ found that Claimant did not suffer from any severe impairments. (Tr. at 533, Finding No. 3.) On this basis, benefits were denied. (Tr. at 533-34, Finding No. 4.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

6

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on October 2, 1950, and was 58 years old at the time of the supplemental administrative hearing, June 18, 2009. (Tr. at 94, 490.) Claimant had a high school education and was able to communicate in English. (Tr.136, 141, 490.) In the past, she worked as a telephone operator, receptionist, and secretary. (Tr. at 21, 137-38, 490-93.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the Appeals Council erred in not finding that Dr. Robertson's August 18, 2009, letter, submitted pursuant to the ALJ's request, established her disability prior to the expiration of her insured status. (Document No. 27 at 4-8.) Claimant asserts that there is no evidence contrary to Dr. Robertson's opinion as to the onset of disability and that there is "no explanation for her debilitating symptomatology other than the fatal car crash in 1990." (<u>Id.</u> at 6.) She asserts that the ALJ "was clearly ready to accept Dr. Robertson's opinion if only the psychiatrist would fill in a few gaps." (<u>Id.</u>) Accordingly, she contends that she should not be penalized because Dr. Robertson was tardy in submitting his letter. (<u>Id.</u> at 7.)

In response, the Commissioner asserts that there is no evidence of record that Claimant's alleged mental conditions imposed any significant functional limitations before her date last insured. (Document No. 28 at 9-12.) The Commissioner asserts that some of Dr. Robertson's opinions suggest

that she was not disabled prior to December 31, 1995. (Id. at 11.) The Commissioner further asserts that Dr. Robertson's August 18, 2009, letter, which was submitted to the Appeals Council, did not provide a basis for changing the ALJ's decision. (Id. at 12-14.) The Commissioner contends that the letter was neither new nor material because it was duplicative, and that there is no reasonable probability that it would change the outcome of the case. (Id. at 13-14.)

In reply, Claimant clarifies that Dr. Robertson mistakenly believed that she last worked in her husband's business in 2001, and stated that she was disabled after that date. (Document No. 29 at 1-3.) He did not rectify his mistake until his letter dated August 3, 2007, in which he clarified that Claimant had been unable to work since the accident in 1990. (Id. at 2.) Claimant asserts that the ALJ was prepared to accept Dr. Robertson's opinion if only he would provide additional information, which was provided subsequent to the ALJ's decision. (Id.) Claimant contends therefore, that the evidence is new, material, and reasonably would have changed the ALJ's decision. (Id.) Claimant therefore, contends that her Motion should be granted. (Id. at 2-3.)

Analysis.

The record demonstrates that in November, 1990, Claimant was involved in an automobile accident, which caused the death of an elderly couple. (Tr. at 568-69.) Claimant was hospitalized and upon discharge, began seeing Dr. Phillip Robertson, a psychiatrist, for her emotional problems stemming from the accident. (Id.) In a letter to Claimant's attorney dated September 6, 2006, Dr. Robertson reported that he had treated Claimant since the early nineties "for emotional problems which have rendered her disabled from employment." (Tr. at 419, 473.) He noted that Claimant relayed on July 12, 2006, that she last worked as a secretary for her husband's business in 2001, and had stopped working at that time because she "couldn't handle it." (Id.) Dr. Robertson opined that Claimant "has been disabled since that time by chronic depression, anxiety, irritability, poor concentration, lack of

8

energy, inability to cope with stress, recurrent post-traumatic stress disorder symptoms stemming from a fatal motor vehicle accident in 1990, and chronic knee problems." (Id.)

On December 19, 2006, Dr. Robertson stated that Claimant had been his patient since 1990, "for treatment soon after a traumatic automobile accident." (Tr. at 472.) He noted that Claimant was hospitalized for two weeks in 1992, following a suicidal ideation with a plan. (Id.) Claimant hospitalized herself in 1995, for the same reason. (Id.) She was last hospitalized in 2002. (Id.) Dr. Robertson completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on January 24, 2006. (Tr. at 476-78.) He opined that Claimant had marked limitations in her ability to complete a normal workday or workweek, perform at a consistent pace, respond appropriately to work pressures in a normal work setting, and perform activities within a schedule, maintain regular attendance, and be punctual. (Tr. at 476-77.) He assessed moderate limitations in her ability to maintain attention and concentration for extended periods and sustain an ordinary routine without special supervision. (Id.) Dr. Robertson also noted that Claimant's impairments would cause her to be absent from work more than three times a month. (Tr. at 478.)

In a letter to Claimant's attorney dated June 15, 2007, Dr. Robertson reported that Claimant had struggled with post-traumatic stress disorder, depression, and anxiety, since the accident in 1990. (Tr. at 482.) He noted that she last worked as a secretary in 2001, but quit because she was "unable to handle it." (Id.) He opined that "[h]er ability to pursue employment is impaired by chronic depression, anxiety, irritability, poor concentration, and poor tolerance for stress. She remains chronically symptomatic to the degree that in my opinion she is unable to engage in sustained gainful employment." (Id.) On August 3, 2007, Dr. Robertson sent a letter to Claimant's attorney clarifying that Claimant "was incapable fo working competitively in the job market, 8 hours a day/5 days a week since the accident of 1990." (Tr. at 483.)

9

Claimant also submitted Dr. Robertson's treatment notes from December 5, 2006, through June 10, 2009. (Tr. at 550-62.) The notes reflect that on July 10, 2007, Claimant continued to deal with the deaths of the two people she accidentally hit and killed with her car in 1990. (Tr. at 560.)

Hospital treatment records from April 30, 2002, indicate that Claimant presented to the emergency room with complaints of depression with suicidal ideation. (Tr. at 432-56.) Dr. Robertson noted Claimant's reports of outpatient counseling in 1990 after she accidentally killed two people in a motor vehicle accident, but that she had no inpatient psychiatric treatment. (Tr. at 434.) Dr. Robertson noted that she had been under the care of Dr. Holden, who had prescribed Zoloft 100mg, and had previously prescribed Prozac and Xanax 2mg. (Id.) Dr. Robertson noted that Claimant had experienced then recent family stressors, poor sleep with disruptive nightmares, poor appetite with a thirty pound weight loss, a loss of energy and interest, anxiousness and restlessness, and suicidal ideation with plan. (Id.) He diagnosed major depressive disorder, recurrent episode, moderate severity; anxiety disorder, not otherwise specified; family circumstance problem; and dependent personality traits. (Tr. at 436.) She was discharged after consultation and medication, in improved and stable condition with no suicidal thoughts. (Tr. at 444-46.)

At the supplemental administrative hearing on June 18, 2009, the ALJ acknowledged that Dr. Robertson was unable to locate the treatment records prior to her date last insured. (Tr. at 578-79.) The ALJ noted Dr. Robertson's letter dated September 6, 2006, in which he stated that he was unable to locate the records. (Tr. at 579.) The ALJ therefore, required something more specific. (Id.) He asked Claimant's attorney to obtain from Dr. Robertson more information regarding his treatment from the date of the accident until the date last insured. (Id.) Specifically, he wanted to know how often he and his staff saw Claimant from 1990 to 2001, and what were his bases and underlying rationale for his opinions of disability. (Tr. at 528, 578, 580-81.) Claimant explained that when she first started seeing

10

Dr. Robertson, he was located in Princeton, West Virginia. (Tr. at 581.) She explained that he had since moved to two different locations, and that he placed his old medical records in his house, and that he could not locate her records. (Tr. at 581-82.)

In response to the ALJ's inquiry, Claimant sent Dr. Robertson a letter dated June 22, 2009, in which she explained the ALJ's concerns and asked Dr. Robertson the following questions:

- What happened to the missing records?

- Approximately how often was Jeanie Crisco seen between 1990 and 2001?

- Is it your belief that her emotional condition today is the direct cause of the accident she suffered in November, 1990?

- While you have repeatedly opined that Jeanie is incapable of sustained employment, the Judge wants to know why (i.e., inability to cope with any stress, complete loss of interest in activities, entertainment, etc., profound depression, frequent crying spells, etc.)

  In a nutshell, he wants you to tie everything back to the automobile accident in November, 1990, provide an opinion as to disability and then explain the basis of that opinion.

 (Document No. 26, Exhibit A.) Dr. Robertson did not respond to Claimant's attorney's letter prior to the ALJ's decision issued on August 5, 2009. (Tr. at 527-34.) In his decision, the ALJ gave little weight to Dr. Robertson's opinion that Claimant was disabled as of December 31, 2005. (Tr. at 532.) The ALJ noted that this matter posed a dilemma and found that

> On the one hand it is reasonable to assume that the traumatic events surrounding the [C]laimant's 1990 accident could have resulted in significant emotional issues which impacted her functioning during the period on or before her date last insured. This is suggested by Dr. Robertson's 2006 narrative statements and medical source statement - mental, and the by the [C]laimant's testimony. On the other hand, the little objective evidence available for the period 1991 - 1995 (exhibit 2F, pp. 57 - 60) makes no mention of any debilitating and disabling mental health problems, or any diagnosis of a mental impairment, and an individual's onset date of disability must be fixed based on the facts and can not be inconsistent with the medical evidence of record (SSR 83-20).

11

(Tr. at 532.)

In a letter dated August 18, 2009, approximately two weeks after the ALJ had determined that Claimant was not disabled prior to December 31, 1995, Dr. Robertson provided Claimant's attorney with the requested information. (Tr. at 522-23.) Dr. Robertson explained that Claimant's missing records from 1990 through 2001, could not be located after the Springhaven, Inc. clinic closed. (Tr. at 522.) He stated that the records either were stored by Springhaven or placed in one of several boxes given to him, which may have been lost or damaged in a basement flood. (Id.) Regarding his care of Claimant, Dr. Robertson stated that she was seen by him for outpatient psychiatric follow-up with medication checks once every one to two months for the first two years and once every three to four months, thereafter. (Id.) Claimant also saw John Terry, a psychologist, for psychotherapy. (Id.) Claimant was last seen at Springhaven on November 19, 2003, and began treatment at Psychiatric Associates of the Virginias on March 2, 2004. (Id.) Dr. Robertson explained that Claimant's psychiatric conditions consisted of a post-traumatic stress disorder, depression, and anxiety, and that these conditions were caused directly by the automobile accident in November, 1990. (Id.) He stated that Claimant's emotional condition subsequently was exacerbated by various family and situational stressors and deaths of family members. (Id.) Dr. Robertson opined that Claimant "is disabled from sustained gainful employment," and noted that she worked only sporadically for eight years prior to quitting altogether in 2001, because she could not handle the stress. (Tr. at 523.) He further opined that Claimant "is disabled by chronic varying degrees of depression, anxiety, low energy, inability to tolerate stress, and resulting inability to maintain concentration, persistence or pace such that she is unable to meet competitive standards for sustained employment." (Id.)

Claimant submitted Dr. Robertson's August 18, 2009, letter to the Appeals Council, who determined that the letter was insufficient "to establish that the [C]laimant was unable to perform all

12

work activity as of November 1990, as alleged." (Tr. at 513.)

In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(*en banc*)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.  The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. §§ 404.1570(b); 404.970(b) (2009). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).[3]

---

[3] Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the Court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence.  42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

In view of the foregoing, the undersigned finds that Dr. Robertson's letter dated August 18, 2009, may reasonably have caused the ALJ to find that Claimant was disabled prior to the expiration of her insured status. At the supplemental administrative hearing, the ALJ had asked for answers to specific questions, which Dr. Robertson provided, though late. The ALJ stated in his decision that he gave Dr. Robertson's opinion little weight because he was unable "to provide any more specific information relating to pre December 1995 treatment." (Tr. at 532.) Dr. Robertson's treatment notes reflect that at least as late as July 10, 2007, Claimant continued to deal with the emotional effects from the automobile accident. Dr. Robertson clearly opined in his letter dated August 18, 2009, that Claimant's emotional condition was caused directly by the "fatal motor vehicle accident in November 1990" and was exacerbated by subsequent family and situational stressors. (Tr. at 522.) Dr. Robertson's treatment notes prior to December 31, 1995, Claimant's date last insured, cannot be located. His letters therefore, are the only evidence of record relating to that the time period at issue and there is no contradictory evidence of record. Accordingly, in view of the July 10, 2007, progress note and Dr. Robertson's August 18, 2009, letter, the undersigned finds that the ALJ reasonably may have found that Claimant was disabled prior to the expiration of her insured status. The information provided in the latest letter is new in that it was evidence the ALJ required and did not have, it was material to the ALJ's decision, and there is a reasonable probability that it would have changed the ALJ's decision. The undersigned therefore, finds that remand of the matter is necessary for further consideration of her disability prior to December 31, 1995.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order  entered September 28, 2012 (Document No. 30.), the Plaintiff's Motion for Judgment on the Pleadings (Document No. 26.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 28.) is

**DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 8, 2013.

R. Clarke VanDervort
United States Magistrate Judge